# CHARLESTON.

## STILES v. LAUREL FORK OIL AND COAL CO. *et al.*

### Submitted February 7, 1900—Decided April 14, 1900.

1. ADMINISTRATOR—*Claim Barred—Renewal.*

   An administrator cannot, by the acknowledgment in pleading of a debt against his decedent which is barred by the statute of limitations, or in any other way, remove the bar of that statute. (p. 842).

2. ACKNOWLEDGMENT IN WRITING—*Renewal.*

   An acknowledgment in writing, to operate as a new promise to remove the bar of the statute of limitations, must be a clear and definite acknowledgment of a precise sum, plainly importing a willingness and liability to pay, not in any wise conditional, nor by way of compromise or attempt at settlement. (p. 843).

3. CREDITOR'S SUIT—*Set-Off—Plea—Limitation.*

   In a suit by a creditor against an expired corporation, where the corporation in its answer pleads a set-off against the plaintiff's demand, the plaintiff may file a plea of the statute of limitations before the commissioner, or in any other manner make that defense before the commissioner taking an account in the case. (p. 843).

4. ACCOUNT—*Acknowledgment—Limitation.*

   A stated account, not signed by the party, will not operate as an acknowledgment, to take a demand out of the statute of limitations. (p. 844).

5. BOOK ENTRIES—*No Acknowledgment.*

   Mere entries by a party in his own book of accounts will not operate as an acknowledgment, to take a demand out of the statute of limitations. (p. 845).

6. EXPIRED CORPORATION—*Equity.*

   There can be no suit against an expired domestic corporation, except one in equity, as provided in sections 57, 59, chapter 53, Code, to wind up its affairs for the benefit of creditors and stockholders. (p. 846).

7. EXPIRED CORPORATION—*Attachment.*

   There can be no attachment for debt against an expired domestic corporation. (p. 846).

8.  Equity Suits—*Corporation -- Creditors.*

In a suit in equity under section 59, chapter 53, Code 1891, by a creditor to assert a debt against an expired domestic corporation, and wind up its affairs, and administer its property for the benefit of creditors, the stockholders are necessary parties; and when a debt is decreed against the corporation, and its property subjected thereto, the decree must both ascertain the debts against the corporation, and declare the shares or interests of the stockholders in the corporation, and in the surplus proceeds of the property decreed to sale.  (p. 846).

Appeal from Circuit Court, Wood County.

Suit by Robert G. Stiles against the Laurel Fork Oil and Coal Company and others.  Decree for plaintiff, and defendants appeal.

*Reversed.*

Merrick & Smith, for appellants.

V. B. Archer, for appellee.

Brannon, Judge:

This is a suit·in chancery in the circuit court of Wood County by R. G. Stiles, administrator of W. C. Stiles, Jr., deceased, against the Laurel Fork Oil and Coal Company and others, to assert against the said corporation, which had been dissolved by the expiration of its charter life, a money demand in favor of the estate of W. C. Stiles. Jr., against said corporation for services of Stiles as its general agent, and to sell land of the corporation to pay said demand, which land was levied upon under an attachment in this case, and to wind up the affairs of said corporation, in which suit the court rendered a decree in favor of the plaintiff for a sum of money, and directed a sale of said land to pay the same.  Lewis C. Gratz and others, who, as stockholders of said corporation, were parties defendant to the cause, have appealed from said decree.

One of the points made for the appellants is that W. C. Stiles, Jr., was a director in said corporation, and that he, therefore, can maintain no suit for services as such general agent, because section 53, chapter 53, Code, denies compensation for services of a director of a corporation unless it is allowed by stockholders; but it is unnecessary to dis-

cuss this point of law, because Stiles was not a director for the time for which he was allowed by the decree compensation as agent.    There are two entries in the proceedings of the directors, simply noting, in stating those present, the presence of Stiles.    These date April 30, 1879, and July 14, 1882.    It is probable that the presence of Stiles is to be explained on the theory that at one meeting he reported a sale of land, which he would do as general agent, and at the other meeting it is stated that he was indebted to the company, and asked an extension.    If these entries in the directors' book stood alone, we might say they show him to be a director; but, the entire record of stockholders and directors being before us, we find that the by-laws authorize three directors, and that at the first meeting of stockholders, in 1869, Lewis Cooper, H. A. Stiles and Thomas Scott were elected directors.    They continued to act, and were once or twice subsequently re-elected. Scott having resigned, Henry Bower was elected in his place in January, 1876, (on the 24th of January), and the next day W. C. Styles, Jr., was elected to fill a vacancy.    Up to this date there is no appearance of his election, but other people were elected directors and served.    In January, 1877, the stockholders elected as directors H. A. Stiles, H. Bower and J. P. Cowperthwait, who accepted and acted as directors thereafter.    No other election of directors appears until January, 1894, when Henry Bower, Henry S. Gratz and Lewis C. Gratz, were elected directors.    Thus, it appears that W. C. Stiles, Jr., was never elected but for one year, and then displaced from the directorship by the election of other directors (a full board) at the close of that year, in January, 1877.    It is thus plain that he never was director but for that one year, ending January, 1877.    So the record shows.    Those entries in the directors' proceedings in 1879 and 1882 of the presence of W. C. Stiles at meetings are thus shown to mean something else.

The next question is, was he the general agent?    Evidence shows that he acted as such for the company from 1869, though no regular election of him appears of record until January 22, 1877, when he was elected by name as general agent by the directors.    Before that time, however, frequent orders of the stockholders and directors refer to

the reports and other action of a general agent, thus show-
ing that there was a general agent acting all along through
those years prior to the formal entry of election, January
22, 1877.   One order recognizes him as agent by name.
As Stiles is shown to have been elected at that date, any
prior election becomes immaterial, except as it bears on
the quantum of his compensation, because he was allowed
by the court only for five years' service, from January 1,
1892, and during all that time he was in under formal elec-
tion.

Stiles being thus general agent, the question comes up,
is Stiles entitled to any compensation?   Clearly, if he
acted, he would be entitled to compensation to the extent
of the worth of his services; but the commissioner allowed
him one hundred dollars a month, upon the theory that the
directors had fixed his pay at that amount.   The defend-
ant stockholders contest this allowance, saying that it is
unreasonable, and that the directors never fixed that com-
pensation.   The by-laws provide that the directors should
appoint a president, treasurer, and secretary, and also ap-
point and employ such agents as, in their judgment, the
business might require, and fix their compensation.   At
the first meeting of the directors, in 1869, "Mr. L. Cooper
was appointed a committee to fix the salary of the officers,
and he reported that he would fix the salaries of the presi-
dent, secretary, and treasurer at three hundred dollars
each per annum, and one hundred dollars per month to
General Agent W. C. Stiles, Jr."   At a later meeting of
the directors, December 24, 1869, Cooper, according to the
record, as committee appointed to fix salaries, reported
that, in addition to the report made at the last meeting, he
"would recommend the payment of one hundred dollars per
month to the general agent, and twenty-five dollars per
month to his clerk, and asked that the committee be dis-
charged.   On motion, the report was accepted, and the
committee discharged."   So the record of the directors
reads.   It is contended that this does not show that the di-
rectors fixed the agent's pay at one hundred dollars per
month.   I think it does.   We must not exact such formal-
ity, exactness, and clearness of expression in the record of
the proceedings, in the country, of directors, as is required

of judicial proceedings, when we see the intention.  What we must look at is the purpose of the action.  Now, first, I say that the first order made Director Cooper an agent to fix the salary, and his action needed no confirmation.  His report was not rejected.  Secondly, the next order showed, not that the board, in words, approved his report; but it does show that the board accepted it, did not reject it, and beyond doubt, intended to approve it.  And the fact that in numerous orders afterwards made by stockholders and directors a general agent is recognized, and his reports and other actions referred to, confirms the position that the above orders of the directors were understood as approving that compensation, because it appears that the directors, with full knowledge that Cooper had fixed the general agent's pay, let him go on in the position and perform its work, with the full belief on the part of Stiles that he was to receive that pay.  I think the orders of the directors fix the pay, and, if they did not, the corporation would be barred from denying that compensation by their silence,—by their conduct,—as an estoppel *in pais.*

The appellants complain that the decree did not allow the corporation against the sum charged by the decree in favor of the plaintiff the sum of four thousand five hundred and fifty-three dollars and ninety cents, admitted in the plaintiff's bill, to be due from Stiles' estate to the corporation.  This demand accrued more than five years before the suit.  The plaintiff, as administrator, when the answer of the company asked the allowance of that set-off, made the defense of the statute of limitations against said demand.  The appellants claim that, as the plaintiff's bill admits an indebtedness of that sum to the corporation, it must be allowed.  Let us see.  The bill, as to this matter, claims that Stiles was entitled to salary as agent, at one thousand two hundred dollars per year, from October, 8, 1870, to October 8, 1896, amounting to thirty-one thousand two hundred dollars, and then says that "during all of said time there was received on account of rents and other sources of revenue from said corporation's property the sum of four thousand five hundred and fifty-three dollars and ninety cents, which, deducted from the gross sum, would leave a net sum of twenty-six thousand six hundred

and forty-six dollars and ten cents due to said W. C. Stiles, Jr., at the time of his death, and now due to the plaintiff, as such administrator." Is this such an acknowledgment as constitutes a new promise to pay the sum? It is not. It is conditional, not an unqualified acknowledgment, equivalent to a promise to pay; for it is only a proposition to allow said sum of four thousand five hundred and fifty-three dollars and ninety cents, provided there should be allowed to the credit of the estate its whole demand of thirty-one thousand two hundred dollars. Section 8, chapter 104, Code. requires that an acknowledgment in writing, to operate as a new promise, must be one "from which a promise of payment may be implied." It must be unconditional, and indicate that the party is actually liable and willing to pay,—unconditionally willing. 13 Am. & Eng. Enc. Law (1st Ed.,) 753. In *Stansburry* v. *Stansburry's Admr's*, 20 W. Va. 23, it is held that: "The burden of removing the bar of the statute by a new promise rests upon the defendants; and an acknowledgment or admission, to have effect, must not only be unqualified in itself, but there must be nothing in the attendant acts or declarations to modify or rebut the inference of willingness to pay which naturally and *prima facie* arises from an unqualified admission. If the acknowledgment be coupled with terms or conditions of any kind, a recovery cannot be had unless they are fulfilled." Another answer to the claim that the bill, by its acknowledgment aforesaid, demands the allowance of said sum, is found in section 9, chapter 104, Code, providing that no acknowledgment or promise by a personal representative of a decedent shall charge his estate, where, without such promise or acknowledgment, the statute would bar it.

Another point made for the appellants against the allowance of the statute of limitations to defeat the demand of said four thousand five hundred and fifty-three dollars and ninety cents is, that the defense of the statute was not properly made. The answer of the defendant corporation asked that said sum be decreed to it against Stiles' estate on the strength of the said acknowledgment in the bill of its being to the credit of the company. The plaintiff, treating this answer as one calling for affirmative relief, be-

cause alleging new matter, filed a special reply, but afterwards withdrew it; and when the case went to a commissioner to report what was due the plaintiff, the plaintiff filed a formal plea of the statute with the commissioner, and afterwards had an entry in court of the filing of the plea, and the case was heard thereon. This was a plea to the answer, and is therefore claimed to be irregular. I suppose that answer is to be regarded as a plea of set-off would be regarded at law,—a cross action. The statute may be at law formally replied to a formal plea of set-off, or, if no formal plea of set-off be filed, but simply an account of specification of set-off, with notice that it will be relied on as such, the statute may be relied on upon the trial without formal plea. It seems to me that, if that answer is to be treated as one calling for affirmative relief, the plea of the statute ought to be regarded as a special reply; but I regard the answer as simply one of defense by way of set-off, not one calling for a special reply. It may be that in such case, between living defendants, the plaintiff would have to amend his bill to set up the statute; but in such a case as this I think the statute can be relied on informally before the commissioner in any mode bringing it to his notice. That plea was such notice. In *Conrad* v. *Buck*, 21 W. Va. 396, it is held that, in a suit in equity for the settlement of an insolvent partnership, one creditor should be allowed to rely on the statute in any proper manner,—for instance, by exceptions to the commissioner's report. In *Woodyard v. Polsley*, 14 W. Va. 211, it is held that in a suit against the estate of a dead man the statute may be relied on before a commissioner, even where it has not been pleaded before the court prior to the order of reference. This is a like case in principle. Thus, I hold that the defense by the administrator of Stiles was sufficiently presented against the demand set up against the estate by the answer of the company.

Another answer to the bar of the statute of limitations made by the corporation is that Stiles, in his lifetime, from time to time, rendered accounts to the company, showing balances due from him as agent, which, as claimed, constituted stated accounts, and were acknowledgments and fresh promises of payment, and therefore repel the statute

of limitations.  I shall not consider the question whether these rendered accounts constitute stated accounts, because such discussion would be immaterial, since, if even they are stated accounts, they do not defeat the statute of limitations.  They could not so operate in the teeth of the statute, which requires a promise or acknowledgment signed by the party in order to defeat the statute of limitations.  2 Wood, Lim. Act. § 280.

Again, it is said, that a letter dated January 19, 1895, written by Stiles to the president of the corporation, contained this clause, "On my books there is to the credit of the Co. over three thousand nine hundred dollars," and it constitutes a new promise in writing, and meets the demand of the statute which requires a writing to answer the bar of the statute.  That would be true if that acknowledgment stood unqualified by other matter contained in that letter, but it is unequivocally otherwise.  That letter, instead of being an unconditional admission of a liability of three thousand nine hundred dollars, and an unqualified expression of willingness to pay it, is an expression of readiness, not to pay it, but only to allow it as an abatement from a very much larger amount claimed in that letter as due to Stiles,—an attempt at settlement.  The letter says: "I have received several letters regarding the accounts of the Co. which I cannot definitely answer until my compensation is adjusted.  On my books there is to the credit of the Co. over three thousand nine hundred dollars; but against this is the unsettled item of compensation for over twenty-five years, during which I have acted for the Co., made its leases, collected its rents, paid its taxes, etc., etc."  The letter goes on further to represent and sustain his demand against the company.  Under the authorities above quoted, and stated in the discussion of another subject, it is perfectly plain that this letter is no answer at all to the bar of the statute of limitations.

Certain entries in the books of Stiles are also relied upon as admissions against himself, and as defeating the statute of limitations.  Entries in a party's book, made by himself, are perhaps admissible evidence; but I need only refer back to authorities above stated to show that mere book entries are not a promise or acknowledgment, to defeat the statute.

The appellants say that it was error to issue and decree upon the attachment in this case, which was levied upon the lands of the corporation, because it had long before the attachment become dissolved by the expiration of its charter, and its assets were therefore distributable for the equal payment of all creditors, under section 59, chapter 53, Code, which makes the property of an expired or dissolved corporation assets for payment of its liabilities first, and the surplus for distribution among the stockholders according to their interests, and consequently no creditor can defeat the design of said statute, of equality among creditors, by the levy of an attachment. I think this is so. By the common law, when a corporation expires, its lands revert to their grantors, its personalty goes to the crown, and debts due to or from it are extinguished. 6 Thomp. Corp. §§ 6718, 7860; *Coulter* v. *Robertson,* 57 Am. Dec. 168. So there was nothing to attach at common law. And upon the expiration of the charter, at common law, all pending suits abated, and no suit could be instituted against it, because, unlike natural persons, it was dead, without heirs or officers for service of process. So it had neither property nor representatives. *May* v. *Bank,* 2 Rob. (Va.) 56; *Rider* v. *Union Factory,* 7 Leigh 154; 9 Am. & Eng. Enc. Law, (2d Ed ) 606, 607. Thus, there could be no attachment against it. This unreasonable rule of the common law, leaving the corporation vested with no property to pay debts, and creditors no remedy, was obviated by the good sense of equity jurisprudence, which entertained a suit by a creditor to enforce their demands against the property of the company. 6 Thomp. Corp. § 7860. But, while the common law did not allow any suit after expiration of the charter, our statute (section 59, chapter 53, Code) adopts the principles of courts of equity before its adoption, namely, that for some purposes the corporation still owned its property; that is—First, for the payment of the creditors; and, secondly, for the purpose of giving the residue of assets to the stockholders. This is a radical change from the common law. Further than this statute allows, a defunct corporation cannot be sued. 6 Thomp. Corp. § 7370, says: "After a corporation becomes dissolved, it can neither sue nor be sued, unless the faculty of

suing or being sued is prolonged by statute for the purpose of winding up its affairs." The suit allowed by said Code section has for its mission the winding up of the affairs of a defunct corporation by decreeing upon its assets—First, for payment of its debts; next, for distribution of the surplus among stockholders. But I cannot see how a remedy given simply for closing up a corporation (a remedy for the equal benefit of all creditors) can be made the instrument, by means of an ancillary attachment, of giving one creditor preference over others. However, the matter is not material in this case, though argued, because there is but one creditor. No creditor is complaining, but only stockholders, and they would be second in right to that creditor, without any attachment, by reason of said Code provision. It did not prejudice them. Thus far, I see no error in the decree.

But this brings us to what I consider an error. This suit is, as above stated, and as the bill admits, brought under said section 59 to wind up the defunct corporation and pay the plaintiff's debt. The bill makes the stockholders parties, as it should do, as they are necessary parties. *Styles* v. *Fork Co.*, 45 W. Va. 374, (32 S. E. 227). They are parties, not only because interested in seeing that only proper indebtedness is decreed, but because they have shares in the surplus. The order of reference required the commissioner to report the names of stockholders, and the amounts of their stock. He did so, but the decree does not adjudicate their rights. What share as stockholders have L. C. Gratz, H. S. Gratz, Ella G. Fell, and other stockholders? The decree does not say. It ignores the commissioner's report as to that matter. The stockholders do not know whether the court will decree them an interest or not. They may assume that it will hereafter do so, but do not know. The suit being for the relief of creditors and stockholders both, it should have adjudicated the respective rights of all, just like creditors of a dead man's estate, or lienors against land of a living man. These stockeholders are creditors, in a sense, of the defunct corporation. Its assets are to be sold, and before sale they should know just what their interests in the assets are. If a stockholder knows his interest,—knows

just what it is by final adjudication,—he may buy the property in or bid it up so as to save himself, just like the creditors of a dead man; but, unless he has such data to go upon,—knows not only the debts, but the respective interests of the stockholders, including his own,—he will not do so. It would be error to decree the sale of land of a dead or living man without ascertaining the interest in the same, especially of a dead man whose estate is being finally wound up. We will have to reverse the decree, and remand the cause to the circuit court for a decree allowing the plaintiff's debt, fixing the rights of stockholders in the surplus, and subjecting the assets.

*Reversed.*