## Commonwealth v. Provident Savings Life Assurance Society.

(Decided October 9, 1913).

### Appeal from Franklin Circuit Court.

1. Insurance, Life—Service of Process Against Upon Insurance Commissioner—Revocation.—A foreign insurance company upon its entry into this state to do business, and after filing its written consent that service upon the Insurance Commissioner should constitute due service in all actions against it, cannot revoke that authority so long as it has liabilities in the State. It cannot cease to do business in the State and withdraw all of its agents, and revoke the authority to serve process upon the Insurance Commissioner so long as it has existing policies in the State.

2. Insurance, Life—Contracts of Insurance—Does Not Cease to do Business by Withdrawing Agents.—Where an insurance company goes into a state and makes contracts of insurance, it does not cease to do business simply because it withdraws its agents and solicits no new business.

3. Insurance, Life—What Is "Doing Business".—A life insurance company collecting premium on policies issued in this State, when

it is authorized to do business in this state, is doing business within the meaning of the statute when it is still insuring these same lives and collecting the premiums on the policies.

4. Insurance, Life—Transfer of Risks to Another Company—Tax on Premiums—Section 609 Ky. Stats.—Appellee did not relieve itself of the tax imposed on premiums by transferring its risks on policies in this State to another company, the latter company not being authorized to do business in this State, section 699' of the Kentucky Statutes being in effect at the time appellee entered this State and a part of its implied contract upon being permitted to do business in this State.

JAMES GARNETT, Attorney General, C. R. McDOWELL and JOHN A. JUDY for appellant.

WM. MARSHALL BULLITT, CLARENCE C. SMITH, KEITH L. BULLITT and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This is an appeal by the Commonwealth of Kentucky from a judgment of the Franklin circuit court overruling a demurrer to the answer of appellee, and carrying it back to the petition, sustaining and dismissing it. The petition was based upon section 4226 of the General Statutes which is as follows:

"Every life insurance company, other than fraternal assessment life insurance companies, not organized under the laws of this State, but doing business therein, shall, on the first day of January in each year, or within thirty days thereafter, return to the Auditor of Public Accounts for deposit in the insurance department a statement under oath of all premiums receipted for on the face of the policy for original insurance and all renewal premiums received in cash or otherwise in this State, or out of this State, on business done in this State during the year ending the 31st day of December, and no deductions shall be made for dividends, or since the last returns were made, on all premium receipts, which shall include single premiums, annuity premiums, and premiums received for renewal, revival or reinstatement of policies, annual and periodical premiums, dividends applied for premiums and additions, and all other premium payments received during the preceding year on all policies which have been written in, or on, the lives of residents of this State, or out of this State on business done in this State, and shall at the same time pay into the State Treasury a tax of two dollars upon each one hundred dollars of said premiums as ascertained."

The Legislature passed an act in 1906, which took effect in June, 1906, declaratory of this act, and fixing a penalty for the violation thereof, which is as follows: (This is now section 4230a, sub-section 2, Kentucky Statutes).

"Any insurance company that has been authorized to transact business in this State shall continue to make the reports required herein as long as it collects any premiums as provided for herein, and shall pay taxes thereon, even after it has voluntarily ceased to write insurance in the State or has withdrawn therefrom, or its license suspended or revoked by the Insurance Commissioner, and for failure to make report of the premiums collected and pay the taxes due thereon, shall be fined five hundred dollars for such offense."

The appellee filed an affidavit, and made a motion to quash the service of process which was served on the Insurance Commissioner as required by law. The court refused to quash the service and appellee excepted.

The court was correct in this. See Home Benefit Society v. Muehl, 22 K. L. R., 1378; Germania Insurance Co. v. Ashby, 23 K. L. R., 1564.

A foreign insurance company upon its entry into the state to do business, and after filing its written consent that service upon the Insurance Commissioner should constitute due service in all actions against it, cannot revoke that authority so long as it has liabilities in the State. It cannot cease to do business in the State and withdraw all of its agents, and revoke the authority to serve process upon the Insurance Commissioner so long as they have existing policies in the state.

Where an insurance company goes into a state and makes contracts of insurance, it does not cease to do business simply because it withdraws its agents and solicits no new business. See Hunter v. Mutual Reserve Life Ins. Co., 218 U. S., 573. Also Conn. Mut. Life Ins. Co. v. Spartley, 172 U. S., 602. In the last named case the court said:

"We think the evidence in this case shows that the company was doing business within the state at the time of this service of process. From 1870 until 1894, it had done an active business throughout the State by its agents therein, and had issued policies of insurance upon the lives of citizens of the State. How many policies it had so issued does not appear. Its action in July, 1894, in assuming to withdraw from the State, was simply a

recall of its agents doing business therein, the giving of a notice to the State Insurance Commissioner, and a refusal to take any new risks or to issue any new policies within the State. Its outstanding policies were not affected thereby, and it continued to collect the premiums upon them and to pay the losses arising thereunder, and it was doing so at the time of the service of process upon its agent. * * * It cannot be said with truth, as we think, that an insurance company does no business within a State unless it have agents therein who are continuously seeking new risks and in its continuing to issue new policies upon such risks. Having succeeded in taking risks in the State through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policyholders to an agent residing in another State, and who was once the agent in the State where the policyholders resided. This action on the part of the company constitutes doing business within the State, so far as is necessary, within the meaning of the law upon this subject."

The appellee seeks to avoid liability for the tax for the reason that on January 1, 1907, it withdrew from the State of Kentucky, and ceased to do business therein, and ceased to write further insurance in the State, and revoked the designation of the insurance commissioner of the State of Kentucky as its agent for the service of process, and ceased to, and did not thereafter write any insurance in the State of Kentucky, or collect any premiums, and did not, nor did the Postal Life Insurance Company, its transferee, during any of the years, collect any premiums in the State of Kentucky, or transact any business therein, and all premiums collected by it since January 1, 1907, have been collected, or received by it in the State of New York, and outside of the State of Kentucky.

Section 4226 of the Kentucky Statutes was a part of the law of this Commonwealth when the appellee entered the State and obtained therefrom its license to do business as an insurance company, and this section became a part of the contract between the insurance company and the State, and the appellee impliedly agreed that all premiums receipted for on the face of the policy for original insurance and all renewal premiums received in cash or otherwise in this State, or out of this State, on

business done in this State on all policies which have been written in, or on, the lives of residents of this State, or out of this State on business done in this State shall be subject to taxation. That is, it agreed to pay into the State Treasury a tax of two dollars upon each one hundred dollars of said premiums as ascertained.

The question is, did the insurance company have the right and power to revoke this agreement as it attempted to do the first of January, 1907? It clearly did not.

Counsel for appellee mainly rests its case upon the definition of "what is doing business?" Is a life insurance company doing business in a State only so long as it is writing new business? If this is true, then the appellant has no case. However, counsel for appellant insists that an insurance company is doing business in this State in the meaning of the statute so long as it is insuring the lives of residents of this State and furnishing protection to the beneficiaries named in the policies against loss from death of the insured, this being the chief business for which insurance companies are organized, and we are unable to see how the court held, that a company collecting premiums on policies issued in this State, when it was authorized to do business in this State, can be said "not to be doing business," when it was still insuring those same lives and collecting the premiums upon the policies.

The Supreme Court of Pennsylvania in a recent case of the Commonwealth v. Equitable Life Assurance Society, 86 Atl. Rep., 787, passed upon this identical question, Pennsylvania having a similar statute to our own. In that case the insurance company reported and paid the tax on all premiums paid and received on policies of insurance issued in the State, but on a great many policies the premiums were paid at the home office of the company in New York, and at other agencies outside of that State, for which the insurance company deducted and refused to pay the State of Pennsylvania any tax thereon, and the court said:

"In order to determine the question in controversy, we must ascertain the source of the premiums which were paid to agencies outside the State. If they were received by the society from business done within the Commonwealth, then they were subject to the tax. If they did not come from such business, they were not subject to the tax. What, then, is the meaning of the words 'business done within this Commonwealth' as used in the

statute taxing gross premiums of every character and description, received from such business? Manifestly the business in which the society is engaged is that of insuring lives; that is, in furnishing protection to the beneficiaries named in the policies against loss from the death of the insured, to the amount designated in the policy. Furnishing this protection is the business to be done by the society within this Commonwealth, as contemplated by the statute, which fixes the amount of the tax which it, as an insurance company organized under the laws of another State, is to pay for the privilege of entry and doing this business within this Commonwealth, and with our people, its residents. The court below seems to have unduly narrowed its inquiry, and contented itself with asking whether the mere receipt of premiums at an outside office was doing business within this Commonwealth. Certainly not, if that was all there was to it. But the answer to that question is not at all decisive of the real inquiry here. The defendant society does not exist merely for the collection of premiums; that is a mere incident to the great and beneficent purpose for which it exists. When it comes within our borders to do business, it renders a service; it furnishes protection and indemnity to its beneficiaries, residents of the State of Pennsylvania. That is the business which it does in Pennsylvania, and that is the purpose for which it seeks and is granted permission to enter. Furnishing that service, that insurance against loss, it makes a proper charge to cover the cost of the service which it renders, and that charge is the premium.

"If the society was merely engaged in collecting premiums, without regard to the business or service for which those premiums were paid, there would be force in the suggestion that premiums collected outside the State do not constitute doing business within the State. But, when we reflect that the tax is placed upon the amount of the premium merely as a measure of the volume of insurance business done within the State, it is apparent that determining the place where the premium is received is not the proper test to apply in order to ascertain what that business was, or in what it consisted."

The remaining question is, did the Provident Savings Life Assurance Society relieve itself of this tax by transferring its risks on these policies in Kentucky to the Postal Life Insurance Company in 1911, the Postal

Company not being authorized to do business in Kentucky? Section 699 of the Statute is sufficient to answer this question, that section being in the statute at the time the Provident Savings Life Assurance Society entered Kentucky, and was a part of its implied contract upon being permitted to do any business in this State:

"No credit of any kind shall be allowed or given as reduction of liabilities to any company transacting business in this State, for re-insurance made in companies not authorized to issue policies herein; and it shall be the duty of the Insurance Commissioner to require schedules of re-insurances to be filed by each company with its annual statement made to his department."

Under this statute we hold that the transfer did not relieve it from liability for the tax.

It is, therefore, the opinion of this court that the case be reversed, and remanded with directions to the lower court to ascertain the amount of premiums received, and render a judgment for the tax thereon.