[No. 14900.    Department Two.    January 9, 1919.]

## GERRICK & GERRICK COMPANY, *Appellant,* v. LLEWELLYN IRON WORKS, *Respondent.*[1]

CONTRACTS (3)—LOCUS. Preliminary negotiations in this state leading up to a written contract formerly entered into in the state of California, are insufficient to establish the locus of the contract in this state.

CORPORATIONS (263) — FOREIGN CORPORATIONS — PROCESS — DOING BUSINESS IN THIS STATE—AGENT. The liability to personal service of a foreign corporation doing business in this state rests entirely upon statute; and where, under Rem. Code, §§ 3720-3722, a corporation had authority to do business and such authority had been formally revoked and forfeited for failure to pay its annual license fees, personal service cannot be made upon its former statutory agent, in an action which accrued subsequent to the forfeiture; and it is immaterial that his designation as agent had not been formally revoked.

SAME (263). Rem. Code, § 3722, making a foreign corporation, once authorized to do business in this state subject to service in actions arising upon its contracts after revocation of its authority and its corporate entity had ceased in this state, does not apply to a cause of action accruing upon a foreign contract after its withdrawal from this state.

Appeal from an order of the superior court for King county, Hall, J., entered December 18, 1917, upon findings in favor of the defendant, quashing service of process upon a foreign corporation, after a hearing before the court.    Affirmed.

*Kerr & McCord,* for appellant.

*Roberts & Skeel,* for respondent.

[1]Reported in 177 Pac. 692.

FULLERTON, J.—The respondent is a foreign corporation, whose home office is located at Los Angeles, California. In the year 1908, it qualified itself to do business in the state of Washington by filing its articles of incorporation, paying the annual corporation license fees, fixing its principal place of business in the state at Seattle, and appointing one Parvin Wright as its statutory agent upon whom service of process could be made. Wright acted as its agent until the year 1913, when he abandoned the agency to enter into a separate business on his own account. No other statutory agent was thereafter substituted by the respondent, nor was any notice served on the secretary of state of any change or default in the agency. At the time of entering upon business for himself, Wright purchased from the respondent whatever material and supplies it had on hand at its principal place of business in this state, and took over the place of business. The last annual license fee paid by the respondent was in the year 1913, covering the period expiring June 30, 1914. On July 1, 1916, the secretary of state, pursuant to statute governing delinquencies of foreign corporations in such cases, officially canceled the right of the respondent to carry on business in this state by striking its name from the roll of authorized corporations.

In the year 1915, correspondence was opened between the respondent and the appellant corporation, Gerrick & Gerrick Company, respecting bids by the latter upon construction work for certain radio towers at Pearl Harbor, Hawaiian Islands, which the respondent had contracted to erect for the United States government. Some details of the contract were also discussed at Seattle during a trip of an officer of respondent to the city. A formal contract between appellant and respondent was closed on September 17,

1915, at Los Angeles, to which city the president of the appellant corporation had repaired for the purpose. Certain modifications of the original contract were entered into between the parties at the home office of the respondent on September 20, 1915, and January 8 and 10, 1916. The contract provided that the respondent might withhold, for thirty-five days after the completion of the contract, thirty per cent of the moneys earned by the appellant, as security for the satisfaction of all claims and liens arising under the appellant's performance of the work. The appellant completed the work on August 10, 1916, at which time it claimed there was a balance due it of $8,558.06, which claim was disputed by the respondent. Under the contract fixing the maturity of the thirty per cent withheld as "of a date 35 days after the completion of the contract," the cause of action accrued September 15, 1916. On February 17, 1917, the appellant began an action in the state of Washington to recover upon its claim, and caused summons and complaint to be served upon Parvin Wright, whose appointment still stood unrevoked upon the records of the secretary of state. A like service of the summons and complaint was made upon the secretary of state, under the terms of the statute providing for that character of service in case a foreign corporation doing business in the state fails to designate an agent for the service of process.

The service of summons was attacked by the respondent by a motion to quash, upon the entry of a special appearance for that purpose. The motion was overruled by the judge who sat at the time of its presentation. The respondent thereafter answered, at the same time preserving its special appearance, and praying that the trial court first determine the issue

raised by a plea in the answer to the want of juris-
diction. On the hearing before another judge, it was
held that no service of summons had been made upon
the respondent subjecting it to the jurisdiction of the
court, and that the service of summons and complaint
should be quashed, and gave judgment accordingly.
From such judgment, this appeal is prosecuted.

It is the contention of the appellant that the court
erred in finding as facts that the respondent ceased
to do business in this state as a foreign corporation
in the year 1914; that Parvin Wright left the employ
of the respondent in the year 1913 and was not its rep-
resentative in any capacity subsequent to that time;
and that the contract between the parties was executed
and delivered at the home office of respondent in Los
Angeles, California; and further, that the court erred
in refusing to find that the contract in suit was made
in the state of Washington; that a considerable part
of the transactions had in connection with the carry-
ing out of the contract were had in this state; and in
failing to draw the conclusion therefrom that it had
jurisdiction to try out the issues arising out of the
contract between the parties.

The contention of the appellant that Seattle was the
place of the contract between the parties seems to us
to be wholly unfounded in fact. The negotiation be-
tween the parties, initiated by correspondence, finally
culminated in a written contract formally entered into
in the state of California at the home office of the re-
spondent. Preliminaries leading up to a contract are
insufficient to establish the locus of the contract, when
the agreement as consummated was put into written
form by the parties in another state and signed by
them in such state.

Another contention of the appellant is that, under
our statutes, the service made upon the respondent

was sufficient to subject it to the jurisdiction of our courts, regardless of the place of contract. At common law it was fundamental that personal service of summons upon a defendant must be had upon him within the limits of the state, in order to confer jurisdiction upon a court of that state. Owing to the necessities of modern business, arising from the wide scope of corporate activities, legislation has created an innovation upon the rule by providing that a corporation domiciled in one state may be subjected to service in other jurisdictions where it carries on business through agents. In such cases, its liability to service beyond the confines of its home state rests wholly upon statute, and whether the attempted service of process is sufficient can only be determined by a construction of the applicable statutes. By statute, a foreign corporation is authorized to do business in this state, and sue and be sued in the courts thereof, upon filing in the office of the secretary of state a certified copy of its articles of incorporation, together with a certificate of the appointment of a local agent and the designation of a principal place of business (Rem. Code, §§ 3720-3722). It is required to pay certain filing fees and an annual license fee (Id., §§ 3709, 3711, 3714). It is provided also that, in case any such corporation neglects for a period of two years to pay its annual license fee, it is the duty of the secretary of state to strike the name of the corporation from the records in his office (Id., § 3715). The evidence in this case shows that the respondent had ceased to do business in this state in the year 1913, through the sale of its place of business, the abandonment of his post by its statutory agent, and its subsequent neglect to pay annual license fees. The public declaration of its forfeiture of the right to do business was not made, it

is true, until July 1, 1916, after it had entered into the present contract. But notwithstanding this fact, we do not think it was subject to service under the terms of our statute. It must be borne in mind that it was being sued upon a California contract, upon which a right of action accrued September 15, 1916, some two and one-half months after the formal declaration of its nonexistence as a corporate entity within this state by the regularly constituted public authority. Service was had upon Wright, who at the time had not acted in the capacity of statutory agent for nearly four years, and who was not otherwise an agent or officer of the respondent. Clearly, we think the service was insufficient under the general statute relating to service upon foreign corporations, found in Rem. Code, § 226.

Nor do we think it sufficient under the special statute, § 3722 of the same code. The plain intent of this statute is to make a foreign corporation which has once been authorized to do business within the state subject to service in actions arising upon its contracts therein, after it has ceased to exist as a corporate entity under our local laws, only when the cause of action accrued prior to its withdrawal from the state. In this instance, however, the evidence clearly shows that the respondent had withdrawn by abandonment in the year 1914, long prior to the execution of the contract. This being so, it follows further that, under the terms of the statute, the service upon the secretary of state was insufficient to hold the respondent, since such a course is allowable only where suit is brought within the period of limitations upon an action which had already accrued prior to withdrawal from the state.

The appellant construes the statute as warranting service of process upon the statutory agent of a for-

eign corporation at any time within the period of limitations upon a cause of action accruing against it, regardless of the relation existing between the date of withdrawal and the date of the accrual of the action. We are of the opinion the statute is not open to such an interpretation, but that the action must have accrued prior to the withdrawal of the corporation from the state.

The appellant further urges that, inasmuch as Wright was designated as the statutory agent of the respondent for the service of process, and such designation had never been formally revoked, he still continued as the statutory agent upon whom service could be made, in the absence of a showing of his death or removal from the state. That would be true only in the case the statute had so provided. *Green v. Equitable Mut. Life & Endowment Ass'n,* 105 Iowa 628, 75 N. W. 635. But, in the absence of a statutory requirement to that effect, the rule prevails that, where the agent has ceased to act, either by reason of death, removal from the state, revocation of authority, or, as in the instant case, abandonment of the agency by the mutual consent of both principal and agent, service upon an agent theretofore named but no longer existent would be inoperative to confer jurisdiction. This same contention was advanced in the case of *Forrest v. Pittsburgh Bridge Co.,* 116 Fed. 357, and disposed of as follows:

"Subject to some criticism as to form and definiteness, the affidavits submitted show that, at the time of the alleged service of summons, Church did not, in fact, represent the Pittsburgh Bridge Company. This would dispose of the case, but for this argument: That a foreign corporation, having filed its certificate, in pursuance of the Illinois act naming a representative, continues to be suable in the state, by service on such named representative—irrespective of the corpora-

tion's actual withdrawal from the state, or the actual cessation of the agency—until another certificate has been filed setting forth that the person named in the previous certificate is no longer the corporation's representative.

"It would, perhaps, be competent, by apt legislation, to make this the law; but, in the absence of legislation to that end, we do not feel authorized to hold that a foreign corporation may be held to have been found in the state; or be held to be represented by an agent, who, in fact, held, at the time, no such agency."

In our opinion, the trial court did not err in its conclusion. Its order will therefore stand affirmed.

MAIN, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.