Jarvy DeBoard

*v.*

B. Perini and Sons, Inc.

(No. 10712)

Submitted April 19, 1955.  Decided May 17, 1955.

Given, Judge, dissenting.

*John J. Justice, Clara W. Justice,* for plaintiff in error.

*Randolph Bias, Bias & Bias,* for defendant in error.

HAYMOND, JUDGE:

In this action of trespass on the case, instituted in the Circuit Court of Mingo County, on February 10, 1954, the plaintiff, Jarvy DeBoard, seeks to recover damages from the defendant, B. Perini and Sons, Inc., a foreign corporation, for injury to his property which resulted in August, 1952, from the flow of water and the accumulation of dirt, rock and debris upon real estate of the plaintiff and which the plaintiff alleges was caused by the negligence of the defendant.

Service of process was accepted in behalf of the defendant by the auditor of this State as its attorney in fact on February 13, 1954.

To the declaration of the plaintiff the defendant filed a plea in abatement by which it challenged the validity of the acceptance of service of process by the auditor and denied the jurisdiction of the circuit court to entertain and determine the case. The circuit court overruled the demurrer of the plaintiff to the plea in abatement and, by final order entered May 6, 1954, dismissed this action and awarded costs against the plaintiff. To that judgment this Court granted this writ of error upon the petition of the plaintiff on November 22, 1954.

The allegations of the declaration, in so far as they are pertinent to the issues raised by the plea in abatement, are, in substance, that the defendant, a corporation created under the laws of the Commonwealth of Massachusetts, mined coal in twenty one separate tracts of land located on or near a stream known as Steep Gut Branch and its tributaries under a lease from Thacker Creek Company; that in mining the coal during the period July, 1946, to December, 1949, the defendant used the method known as strip mining, and placed large quantities of dirt, rock and debris in the stream and its tributaries and upon the slope of a hill in a position which caused those materials to slip or fall into the streams and obstruct the flow of the waters in them; that on August 16, 1952, during a period of rainfall, the waters of Steep Gut Branch overflowed its banks,

flooded the land of the plaintiff located in its watershed, carried away and destroyed portions of his land, trees, shrubbery, flowers and vegetation in his lawn and garden, the porch, the steps and the walkway to his house, permanently changed the course of the stream and diverted it to and upon his land, deposited large quantities of dirt, rock and debris upon his land, and rendered useless a road or way upon and over it.

The substance of the averments of the plea in abatement is that the defendant is a corporation organized under the laws of the Commonwealth of Massachusetts with its main office at Framingham, Middlesex County, in that State; that on July 29, 1943, it entered the State of West Virginia and for a period of time did business and owned property in Mingo County; that the auditor of this State became its attorney in fact to be served with, or to accept service of, process for it; that in June, 1950, the defendant ceased to do business in and removed all its property from this State; that in June, 1951, it applied for and obtained from the secretary of state of West Virginia a certificate of withdrawal from this State; that since its withdrawal it has not held property or done business in this State; that its withdrawal terminated the authority of the auditor as its attorney in fact to be served with or to accept service of process in its behalf; that the institution of this action on February 10, 1954, the acceptance of service of process by the auditor on February 13, 1954, and the accrual of the cause of action of the plaintiff on August 16, 1952, occurred after the authority of the auditor as attorney in fact had terminated and the defendant had ceased to hold property and do business in this State; and that the acceptance of service of process by the auditor is invalid and the Circuit Court of Mingo County does not have jurisdiction of this action.

The question raised by the demurrer to the plea in abatement is whether, upon the acceptance of service of process by the auditor, the circuit court has jurisdiction to entertain and determine this case. The question of the liability of the defendant or the right of the plaintiff to

sue the defendant in the State in which it was incorporated is not involved on this writ of error.

Section 79, Article 1, Chapter 31, Code, 1931, as amended, permits any foreign corporation to hold property and transact business in this State if it complies with the provisions of the section and accepts and agrees to be governed by such provisions and by the laws of this State relating to corporations chartered in this State.

By Section 71, Article 1, Chapter 31, Code, 1931, as amended, the auditor of this State is constituted the attorney in fact in behalf of every corporation created under the laws of this State and of every foreign corporation doing business in this State, and is authorized, without any act of any such corporation, to accept in its behalf service of any notice and process which may be served upon it in this State. This statutory authority of the auditor is statewide in scope, *Kay and Ess Company* v. *Chadeloid Chemical Company,* 20 F. Supp. 653; and it extends to the acceptance of service of process in actions, suits and proceedings of every kind or character except those in which he has an interest. See *Owen* v. *Appalachian Power Company,* 78 W. Va. 596, 89 S. E. 262; *Frazier* v. *The Steel and Tube Company of America,* 101 W. Va. 327, 132 S. E. 723, 45 A.L.R. 1442; *Nicholas Land Company* v. *Crowder,* 127 W. Va. 216, 32 S. E. 2d 563; 23 Am. Jur., Foreign Corporations, Section 494.

The statute relating to the surrender by a foreign corporation of its authority to hold property and transact business in this State, Section 84, Article 1, Chapter 31, Code, 1931, provides that any such corporation after publication in the manner specified of a notice of its intention to withdraw from this State shall make application to the secretary of state who shall file the application in his office and issue to the corporation a certificate of withdrawal. The statute further provides that such certificate of withdrawal shall not be issued unless and until the corporation has paid any amount it may owe as license tax and all interest and penalties, and that the issuance of such

certificate "shall not relieve the corporation of any debt or obligation due from it to the State or any resident thereof."

In 23 Am. Jur., Foreign Corporations, Section 500, the text contains these statements:

"Although there is some authority to the contrary, the prevailing rule is that a foreign corporation which has qualified to do business in the state and for which an agent to receive process in suits against it has been designated cannot, by ceasing to do business in the state and withdrawing therefrom, escape from the jurisdiction of the courts of such state as to suits brought by residents of the state on causes of action arising while the corporation was doing business in the state. The mere cessation of business and withdrawal from the state do not revoke the authority of the designated agent to receive service in such suits, and the corporation cannot, according to the prevailing rule, accomplish such a result by an attempt expressly to revoke the agency, either where the statute expressly provides that it shall be irrevocable so long as liabilities in the state remain outstanding or in the absence of such a provision, but is in all such cases bound by service on the designated agent. The application of this rule is not affected by the form of the statute as requiring the designation of a private person or of a state official, or as providing that the service may be made on a public official without any stipulation or designation by the corporation. The same rule applies where the corporation does not voluntarily withdraw from the state, but is compelled to cease doing business by the cancellation of its license. Even though a subsequent statute practically drives a foreign corporation out of the state, it cannot affect the rights already secured to those who had entered into contract relations with it prior to that time.

"The rule that the authority of the designated agent of a foreign corporation to receive service of process survives the withdrawal of the corporation from the state operates only in favor of those for whose benefit the statutes were made, namely, persons dealing with the corporation during

the time when, by virtue of its designation of an agent, it was authorized to do business in the state. It does not apply to suits arising out of transactions in another state, or in suits on contracts made and to be performed outside the state."

The rule supported by the weight of authority, as stated in Annotation IIa, 45 A.L.R. 1447, is that "if a statute requires as a condition precedent to the doing of business in the state by a foreign corporation that it shall designate an agent in the state on whom process may be served in actions against it, the withdrawal of the corporation from the state does not revoke the authority of the agent to receive service in an action on a liability arising in the state out of business done by the foreign corporation therein." This rule applies whether the statute requires the corporation to designate a private person or a public official or whether the statute constitutes a public official as the agent of the corporation to receive service of process against it.

If while doing business in the State a cause of action has arisen against a foreign corporation and such corporation subsequently withdraws from the State, its withdrawal does not terminate the authority of an official constituted by statute as the agent of such corporation in the state upon whom process may be served to receive service of process in an action against it as the statutory appointment of such agent for that purpose is a power coupled with an interest which may not be revoked by the withdrawal of the corporation. 18 Fletcher, Cyclopedia of the Law of Private Corporations, Revised and Permanent Edition, Chapter 67, Section 8762.

In 4 Michie's Jurisprudence, Corporations, Section 302, the text is in this language: "The loss by a foreign corporation of its previously acquired right to do business in a state does not affect its capacity to be sued in respect to a contract made or right vested when it was lawfully doing business in the state. If a statute requires as a condition precedent to the doing of business in the state by a foreign

corporation that it shall designate an agent in the state on whom process may be served in actions against it, withdrawal of the corporation from the state does not revoke the authority of the agent to receive service in an action on a liability arising in the state out of business done by the foreign corporation therein." See also 20 C. J. S., Corporations, Section 1920f at page 170.

In conformity to the principles expressed in the foregoing authorities a foreign corporation, which while actually transacting business in another state enters into a contract with one of its residents and, after it has committed a breach of the contract, withdraws from such state, remains subject to its jurisdiction, and process in an action instituted against such corporation after its withdrawal may be served upon or accepted by the person appointed by such corporation or designated by statute as its agent for that purpose. *Frazier* v. *The Steel and Tube Company of America,* 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442.

When a foreign corporation makes and breaches a contract while it does business in the state a cause of action accrues against it before it withdraws and the state from which it withdraws has jurisdiction of a suit or an action involving such contract instituted after its withdrawal upon service of process upon the person appointed by such corporation or designated by statute as its agent for that purpose. In the *Frazier* case, which is cited and relied upon by the plaintiff, this Court held that "A foreign corporation on coming into this state and engaging in business under authority granted it pursuant to statutes providing therefor, thereby consents to the provision of the statute making the state auditor its attorney in fact to accept service of process for it, and such consent extends to all actions on contracts made by it with citizens of the state while doing business under such authority, though it may have ceased to do business or have withdrawn from the state prior to the bringing of the action." In the opinion this Court used this language: "In the present case the cause of action arose before the defendant corporation made application to withdraw its business from

the state. Defendant was still subject to the jurisdiction of the courts of this state when it breached its contract. There is no question of plaintiff's right to bring suit. To hold that the auditor's authority to accept service of process expired with the issuance of the certificate of withdrawal would be to hold that the statute providing for such withdrawal took away plaintiff's right of action, and relieved defendant of all obligations incurred while doing business in the state under the authority granted it by the state. Such is not the policy of this state in respect to contracts between foreign corporations and its citizens."

A foreign insurance corporation authorized to do business in another state is subject to its jurisdiction and it can not, by withdrawing from the state, escape from such jurisdiction or revoke the authority of the person appointed by it or designated by statute as its agent for the service of process in suits and actions against it so long as it has existing policies in the state, even though a cause of action on any such policy does not accrue or the institution of a suit or an action on any such policy does not occur until after such corporation has withdrawn from the state. See *S. M. Smith Insurance Agency* v. *Hamilton Fire Insurance Company,* 69 W. Va. 129, 71 S. E. 194; *Home Benefit Society of New York* v. *Muehl,* 109 Ky. 479, 59 S. W. 520; *Commonwealth* v. *Provident Savings Life Assurance Society,* 155 Ky. 197, 159 S. W. 698, 155 Ky. 771, 160 S. W. 476; *Germania Insurance Company* v. *Ashby,* 112 Ky. 303, 65 S. W. 611, 99 Am. St. Rep. 295; *McClamroch* v. *Southern Surety Company,* 193 Iowa 249, 187 N. W. 41; *Magoffin* v. *Mutual Reserve Fund Life Association,* 87 Minn. 260, 91 N. W. 1115, 94 Am. St. Rep. 699; *Hunter* v. *Mutual Reserve Life Insurance Company,* 192 N. Y. 85, 84 N. E. 576.

If the defendant had entered into a contract with the plaintiff and incurred a contractual obligation to him while doing business in this State and had obtained its certificate of withdrawal while the contract was unbreached and outstanding and before a cause of action on it had accrued by reason of its violation by the defendant, or if

a cause of action on its contract had accrued before its certificate of withdrawal was issued, it would have remained subject to the jurisdiction of this State and service of process upon the auditor, or his acceptance of service of such process, in an action or a suit against it on such contract instituted subsequent to its breach and after the withdrawal from this State by the defendant, would have been valid, and a court of this State in which such action or suit had been instituted and from which such process had issued would, by virtue of its service upon the auditor or his acceptance of service, have jurisdiction of the defendant in such proceeding. See *Frazier* v. *The Steel and Tube Company of America,* 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442; *The Billmyer Lumber Company* v. *Merchants Coal Company of West Virginia,* 66 W. Va. 696, 66 S. E. 1073, 26 L. R. A., N. S., 1101. Or, if the alleged acts of negligence of the defendant had caused injury to the property of the plaintiff before the defendant regularly withdrew from the State and obtained its certificate of withdrawal and, in consequence, a cause of action had then accrued to the plaintiff, the acceptance of service of process by the auditor on February 13, 1954, after the defendant had withdrawn from this State, would be valid and the circuit court, from which the process issued, would have jurisdiction to entertain and determine this case.

In the instant case, however, none of the foregoing conditions existed before the defendant ceased to hold property and transact business in this State in June, 1950, or before it obtained its certificate of withdrawal from this State in June, 1951. The regularity of the issuance of the certificate and the good faith of the defendant in applying for and obtaining it and in withdrawing from this State are not questioned. While the defendant did business in this State it made no contract with the plaintiff and incurred no obligation to him of that character. The acts of negligence alleged to have been committed by the defendant in the production of coal by its use of the strip mining method did not cause any injury to the property of the plaintiff until August 16, 1952, which was more than a

year after the defendant had been issued a certificate of withdrawal. At the time the certificate was issued the defendant had incurred no debt or obligation to the State or any of its residents, no injury had resulted to the plaintiff from any previous act of the defendant, no cause of action against the defendant had accrued to the plaintiff, and no liability of the defendant to the plaintiff resulting from any act of the defendant had occurred. In this situation the provision of Section 84, Article 1, Chapter 31, Code, 1931, that the issuance of a certificate of withdrawal to a foreign corporation "shall not relieve the corporation of any debt or obligation due from it to the State or any resident thereof." does not apply to the defendant or authorize the auditor to accept service of process against it in this action. The quoted provision of the statute does not operate to continue the statutory authority of the auditor, as the attorney in fact of a foreign corporation, after the issuance to it of a certificate of withdrawal, to be served with or to accept service of process against it in an action in tort based on a cause of action which did not arise until after the issuance of the certificate of withdrawal.

After a foreign corporation has withdrawn from a state in which it was authorized to transact business it is beyond the jurisdiction of that state as to causes of action which accrue after its withdrawal except those which subsequently arise from breach of contracts made by it before its withdrawal. See 20 C. J. S., Corporations, Section 1920f at page 172; *Home Benefit Society of New York* v. *Muehl,* 109 Ky. 479, 59 S. W. 520; *Racine Lumber and Manufacturing Company* v. *G. W. White Lumber Company,* 190 Ill. App. 102; *Fletcher* v. *Southern Colonization Company* 148 Minn. 478, 181 N. W. 205; *Hexter* v. *Day-Elder Motors Corporation,* 192 App. Div. 394, 182 N. Y. S. 717; *Badger* v. *Helvetia-Swiss Fire Insurance Company of Saint Gall, Switzerland,* 136 App. Div. 31, 120 N. Y. S. 161; *Gerrick and Gerrick Company* v. *Llewellyn Iron Works,* 105 Wash. 98, 177 P. 692; *Chipman, Limited,* v. *Thomas B. Jeffrey Company,* 251 U. S. 373, 40 S. Ct. 172, 64 L. ed. 314.

When a foreign corporation, while authorized to hold property and transact business in this State, engages in acts and conduct which do not cause injury until after it has been regularly issued a certificate of withdrawal and has withdrawn from this State, acceptance of service of process in its behalf by the auditor in an action in tort based on a cause of action which did not accrue to the plaintiff until after such corporation obtained such certificate of withdrawal is unauthorized and invalid, and the court from which such process issued does not have jurisdiction of such corporation in such action against it.

The conclusion just expressed is supported by law and logic and is consonant with sound public policy. Though public policy is not controlling in connection with the lack of authority of the auditor to accept service of process in behalf of the defendant in this action, it is an element which merits consideration in the determination of that question. To subject a foreign corporation to the jurisdiction of this State upon acceptance by the auditor of service of process in an action in tort against it involving its acts or conduct which did not cause injury to a resident plaintiff or give rise to a cause of action against such corporation until after it has been regularly issued a certificate of withdrawal and in good faith has withdrawn from this State would have a tendency to deter foreign corporations from entering the State and participating in its economic progress and development and to deprive the State of the benefits of the capital which they supply and the opportunity for added employment which they customarily afford.

For the reasons stated the judgment of the circuit court which dismissed this action and awarded costs against the plaintiff is affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

I am unable to read into the pertinent statute, Code, 31-1-84, the intent on the part of the Legislature to relieve

foreign corporations, licensed to do business in this State, from liability of certain torts for which domestic corporations must answer in damages. Most certainly, the language of the statute does not expressly do so. After providing the method whereby a foreign corporation may be licensed to do business in this State, and after providing that "The secretary of state shall * * * issue to such corporation a certificate of withdrawal" upon the doing of certain acts by the corporation, the statute provides: "The issuance of such certificate of withdrawal shall not relieve the corporation of any debt or obligation due from it to the State or any resident thereof." Notice the use of the words "debt or obligation". Notice also the absence of any word or phrase limiting liability to cases wherein causes of action have accrued, as are contained in some statutes of other jurisdictions.

The majority opinion concedes that as to a liability arising out of contract, such a corporation is not relieved of liability by withdrawal, even though no cause of action has accrued, but refuses to apply the same rule where the liability arises out of tort. There exists no reason why such a corporation should not be held liable in the courts of this State for its unlawful or tortious acts, committed by it before withdrawal, even though damages resulting from such acts do not result until after withdrawal. The wording of the statute, as well as its spirit and purpose, compels this conclusion.

As above noticed, the statute continues the liability of such a corporation after withdrawal as to "any debt or obligation". The word "obligation" is of very broad meaning and embraces tort claims. It includes "That which a person is bound to do or forbear; any duty imposed by law, promise, contract, relations of society, courtesy, kindness, etc." Black's Law Dictionary, Fourth Edition. "The obligation is the bond or chain with which the law joins together persons or groups of persons in consequence of certain voluntary acts. The acts which have the effect of attracting an obligation are chiefly those classed under the heads of Contract and Delict, of agree-

ment and crime." Bouvier's Law Dictionary, Rawle's Third Revision. "That which a person is bound to do or forbear, any duty imposed by law, promise, or contract, by the relations of society, or by courtesy, kindness, etc." Webster's New International Dictionary, Second Edition. In none of the definitions is there any indication that there must exist a "cause of action" before there can exist an "obligation". Is it not clear that the Legislature, by using the word "obligation", after using the word "debt", intended to continue liability of such a corporation after withdrawal as to all liabilities not necessarily embraced in the word "debt"? Had the Legislature intended to limit such continued liability to cases where causes of action had accrued before withdrawal, would it not have said as much instead of using the all inclusive words "debt or obligation"? If it had intended one rule as to obligations relating to contracts, and another as to torts, would it not have said as much?

In *Lynchburg Colliery Co.* v. *Gauley and Eastern Railway Co.*, 92 W. Va. 144, 114 S. E. 462, the plaintiff sought damages done to its lands by the defendant in construction of a railroad. Action was instituted subsequent to withdrawal of defendant. This Court held: "1. Besides the jurisdiction in equity to wind up the affairs of a dissolved corporation, given by section 59 of chapter 53 of the Code, said section properly construed extends the life of a corporation for all purposes of suits, at law or in equity, to vindicate the rights of third persons against it respecting its contracts or torts. The ruling on this subject in *Stiles* v. *Laurel Fork Oil & Coal Company*, 47 W. Va. 838, interpreted." In the opinion, the Court said: "The old rule of the common law has been changed in most, if not all, of the states; and under most of them a corporation may be made liable for torts committed before or after the expiration of its charter. 14A, C. J. 1151, section 3804. And this authority says this rule is applied generally when the statute, as in this state, continues the existence of corporations for the purpose of winding up and settling their affairs * * *".

I think it can not be disputed with any force that the Legislature intended, and attempted to provide, for the citizens of this State, the same rights with reference to actions against foreign corporations doing business in this State as exist against domestic corporations. "1. Foreign building associations legally doing business in this State have the same rights, powers, and privileges, and are subject to the same regulations, restrictions, and liabilities as domestic associations." *Archer* v. *Baltimore Building & Loan Ass'n*, 45 W. Va. 37, 30 S. E. 241, 26 L. R. A., N. S., 1138n. See *Toledo Tie & Lumber Co.* v. *Thomas*, 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925, 24 L. R. A. 317n. The State Code, 31-1-71, constituting the auditor of this State attorney in fact for the purpose of accepting service of process, makes no distinction between those corporations organized under the laws of this State and corporations organized under the laws of other jurisdictions, or as to actions based on contracts and actions arising out of torts. I can not read either such distinction into the statute, and believe none was intended. Neither can I find any support for the view adopted by the majority opinion in the numerous cases cited therein. Those cases relate merely to causes of action arising out of contract, or are controlled by statutes materially different from our own. The quotations contained in the majority opinion, in so far as applicable, most of them having relation only to cases arising on contract, I think, support the view expressed in this dissent. For example, the majority rule quoted from 45 A. L. R. 1447, IIa, says that "the withdrawal of the corporation from the state does not revoke the authority of the agent to receive service in an action on a liability arising in the state out of business done by the foreign corporation therein". Notice that the authority to accept service of process rests upon the existence of "liability", not the accruing of a cause of action. Can it be questioned that the "liability" of defendant in the instant action, resulting from its wrongful and negligent manner of strip mining, did not arise in connection with the business done by it in the State? As pointed out above, the majority concedes that under our statute service on

the auditor as to a contract liability, where the cause of action did not accrue until after withdrawal, as where a note representing indebtedness would not become due until after withdrawal, would be good service. In this respect, is there any basis for a different rule as to tort liabilities? It has been suggested that if such a rule existed as to tort liabilities, foreign corporations could not determine the extent of their liabilities upon withdrawal. But is not the foreign corporation withdrawing charged with knowledge of its own wrongful and negligent acts and its liability as to such acts?

The majority would also rely upon public policy to support its conclusion, in that such a policy would induce the investment of foreign capital within the State. But can we imagine our Legislature adopting a policy which would permit foreign corporations to exploit, by tortious acts, the property and rights of the citizens of this State, and escape liability by the simple means of withdrawal, an act wholly within the power of the foreign corporation, in so far as citizens are concerned, while requiring domestic corporations to respond in damages for the same type of liability? Would not such a policy tend to injure, if not destroy, domestic corporations? The inherent danger in the conclusion is not imaginary. According to allegations of the declaration in the instant action, the twenty one farms were severely and permanently injured by the unlawful methods employed by defendant in its strip mining operations. Defendant breached its duty or obligation in connection therewith and should be required to respond in damages, in the courts of this State, to the same extent and in the same manner as domestic corporations would be held liable.

Being of the views indicated, I respectfully dissent. I would hold the acceptance of service of process by the auditor valid.