# CHARLESTON.

R. L. FRAZIER v. THE STEEL & TUBE COMPANY OF AMERICA.

(No. 5445.)

Submitted March 23, 1926.   Decided April 6, 1926.

CORPORATIONS—*Consent of Foreign Corporation, Engaging in Business in State, to Statute Making State Auditor Attorney in Fact to Accept Service of Process for it, Extends to All Actions on Contracts Made by it With Citizens of State, Though it Ceases to Transact Business or Has Withdrawn From State Prior to Bringing Action (Code, C. 54, §§ 24a, 30; and chapter 32, §132).*

A foreign corporation on coming into this state and engaging in business under authority granted it pursuant to statutes providing therefor, thereby consents to the provision of the statute making the state auditor its attorney in fact to accept service of process for it, and such consent extends to all actions on contracts made by it with citizens of the state while doing business under such authority, though it may have ceased to do business or have withdrawn from the state prior to the bringing of the action.

LITZ, WOODS, JUDGES, absent.

(Corporations, 14a C. J. §§ 4083, 4129.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Logan County.

Assumpsit by R. L. Frazier against the Steel & Tube Company of America for breach of a contract. To review a judgment sustaining defendant's plea in abatement and dismissing plaintiff's action, plaintiff brings error.

*Reversed and remanded.*

*Minter & McNemar* and *Mark T. Valentine,* for plaintiff in error.

*Chafin & Estep,* for defendant in error.

MILLER, JUDGE:

The trial court sustained defendant's plea in abatement and dismissed plaintiff's action, for want of jurisdiction. The action was in assumpsit for breach of contract.

By its plea the defendant alleged that it is a foreign corporation, created and existing under the laws of the State of Delaware; that at the time of the institution of the action it was not engaged in business in this state, but had, under authority of the secretary of state, withdrawn from the state; and that at the time process was served on the state auditor, he was no longer authorized to accept service, and that such attempted service was void.

Section 24-a, chapter 54 of the Code provides: "The auditor of this state shall be, and he is hereby constituted the attorney in fact for and on behalf of every foreign corporation doing business in this state, and of every non-resident domestic corporation, with authority to accept service of process on behalf of and upon whom service of process may be made in this state for and against such corporation. No act of such corporation appointing the auditor such attorney in fact shall be necessary." Previous to the amendment of this section in 1915, the statute required such corporations to file in the auditor's office their power of attorney to accept service of process upon them, and by the same instrument to consent that such service should constitute due and legal service.

Defendant's contention is that the agency, or authority of the auditor to accept service of process exists only so long as the foreign corporation is authorized to do business within the state. It seems to be admitted that where the foreign corporation actually appoints some person as its attorney in fact to accept service of process in a state where it is authorized to do business, and where the agency creates a power coupled with an interest, such power of attorney is irrevocable as long as an interest in the subject of the power continues, and that by withdrawing from the state, such corporation does not, and can not, revoke the authority of its agent. But here it is said that the service of process created by the statute is constructive service only, and the authority of the state officer ceases when the corporation formally withdraws its business from the state. For this proposition counsel cite and rely on *Cady* v. *Associated Colonies,* 119 Fed. 420. The opinion in that case, after discussing the question of constructive service, simply holds that, under the California

statute, service of process on the secretary of state is valid only when the foreign corporation is actually doing business within the state, and cites for the proposition so laid down, *St. Clair* v. *Cox,* 106 U. S. 350; *Swan* v. *Association,* 100 Fed. 922; and *Friedman* v. *Insurance Co.,* 101 Fed. 535. In the *St. Clair* case, where the Michigan statute made service of a copy of a writ of attachment on ''any officer, member, clerk, or agent'' of a foreign corporation, to have the force and effect of personal service of summons, it was held that the officers return, that he had served a copy of the writ on the defendant ''by delivering the same to Henry J. Colwell, Esq., agent of the said Winthrop Mining Company, personally, in said county,'' was insufficient where neither the record nor the return showed that the company was at the time doing business in the state, and that it did not, therefore, appear even prima facie that Colwell stood in any such representative capacity to the company as would justify the service of a copy of the writ on him.

Whatever may be the effect of these decisions, a number of the later decisions of the Supreme Court of the United States and other federal courts do not seem to support defendant's theory. In *Hunter* v. *Mutual Reserve Life Insurance Co.,* 218 U. S. 572, the Supreme Court, approvingly quoted from *Moore* v. *Mut. Res. Life Ins. Co.,* 129 N. C. 31, as follows: ''It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time, whether it is in terms irrevocable or not. But to this general rule there are well-established exceptions, as to where it is coupled with an interest, or where it is contractual in its nature, given for a consideration and for the protection of some one or some interest. In our opinion this power falls under this exception to the general rule. It was contractual in its nature, was given upon consideration defendant should have the right to carry on its business in this state, and for the protection of those who should deal with the defendant.'' In the same opinion, commenting on *Woodward* v. *Mut. Res. Life Ins. Co.,* 178 N. Y. 490, the Supreme Court said: ''It was said in that case that the stipulation of the company in regard to service of process became an obligation of the company precisely as

though it 'had been incorporated in the policies; and thereafter, whether the company continued to do business in the state or not, policy holders could commence action by service on the secretary of state,' subsequently changed to the insurance commissioner. *Woodward* v. *Mutual Reserve L. Ins. Co.* was cited by this court in its opinion sustaining the judgment in the *Birch* case." *Mut. Res. Ins. Co.* v. *Birch,* 200 U. S. 612. And in *Hill* v. *Mining & Development Co.,* 156 Fed. 797, it is said in respect to the *St. Clair* case, that: "This does not limit the power of the state to prescribe a mode of service confined to the time when the corporation is actually engaged in business or to the agents of the corporation; but it does confine the service 'to litigation arising out of its transactions in the state,' and to its agents, 'or persons specially designated.'" In *Conn Mut. Life Ins. Co.* v. *Spratley,* 172 U. S. 602, the court, in the opinion by Mr. Justice Peckham, said: "A vast mass of business is now done throughout the country by corporations which are chartered by states other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the state where the business was done, out of which the dispute arose."

In *Germania Insurance Company* v. *Ashby,* 112 Ky. 303, 99 Am. St. Rep. 295, where the statute is similar to our own before the amendment of 1915, the Kentucky court said: "There is no provision in the law limiting this consent to such time as the insurance company shall do business in this state. The object and purpose of the statute * * * was to provide a mode of service to citizens who should desire to sue upon contracts of the insurance company, rather than compel them to go to the state of the corporation for redress. If this consent is to be withdrawn as soon as the company withdraws, the provision, so far as the insurance commissioner is concerned, would be a useless provision. As long as the company is engaged in business here, service can be had on the agent; but when it ceases to do business, and has no agents, there is a necessity for some person upon whom process might be had. We conclude, therefore, when the reason of the statute is taken

into consideration, that it is intended that the consent to
service on the insurance commissioner is not limited to the
time when the company is soliciting business here, but extends
to all business that it may do while here. As long as a policy
issued is in force, or loss thereunder remains unsatisfied, the
consent to service on the insurance commissioner is binding."
And in *Mut. Res. Fund Life Ass'n* v. *Phelps*, 190 U. S. 147, a
case arising under the same statute, citing the *Ashby* case,
and *Home Benefit Soc.* v. *Muehl*, 109 Ky. 479, the Supreme
Court said: "Such decision of the highest court of Kentucky,
construing one of its own statutes, if not controlling on this
court, is very persuasive, and it certainly is controlling unless
it is held to be merely an interpretation of a contract created
by the statute. As an original question, and independently
of any expression on the part of the court of appeals, we are
of opinion that such is the true construction."

It is true a number of the federal cases cited and quoted
from above involved insurance contracts where the defendant
had policies still in force in the state, but the principle is the
same, for the rights of the plaintiff depend on contractual
relations with the foreign corporation,—on contracts made
when the corporation was actually doing business in the state,
that is, making new contracts. Commenting on the decisions
of the Supreme Court of the United States, the Massachusetts
court, in *Reynolds* v. *M. K. & T. Ry. Co.*, 224 Mass. 379, 113
N. E. 413, said: "That court has not undertaken to formulate
any general rule defining what transactions are essential to
the doing of business in the sense which will render the one
conducting it liable to service of process. It has gone no
further than to say that as to corporations: 'The business
must be such in character and extent as to warrant the infer-
ence that the corporation has subjected itself to the jurisdic-
tion and laws of the district in which it is served.' *St. Louis
Southern Railway* v. *Alexander*, 227 U. S. 218, 227, 33 Sup.
Ct. 245, 248 (57 L. Ed. 486, Ann. Cas. 1915B, 77)."

When a foreign corporation comes into a state for the
purpose of doing business, and is given authority by statute to
do so, the permission to transact business with the citizens of
the state is a sufficient contractual consideration for the

agreement in regard to service or process; and the agreement between the state and the corporation being for the benefit of the citizens of the state having business with the corporation, the agency created by the statute or by appointment becomes a power coupled with an interest, and is irrevocable as long as the interest in the subject of the power continues. *Hunter* v. *Mut. Res. Life Ins. Co., supra; Germania Ins. Co.* v. *Ashby, supra; Groel* v. *United Electric Co.,* 69 N. J. Eq. 397; *Meixell* v. *American Motor Car Sales Co.,* 181 Ind. 153, Ann. Cas. 1916D, 375, and cases cited and reviewed in note.

"The general rule is that where a foreign corporation consents, on coming into a domestic state to do business, that service on a designated state officer shall be a valid service on the company, that consent extends to all actions relating to any business done by the company while in the state, though it may have ceased to do business or have withdrawn from the state prior to the bringing of the action." 5 Thompson on Corporations, (2nd ed.), 1573, § 6772. This rule is fully supported by the cases cited in the text above quoted; and is the rule prevailing in almost all the state courts in this country. Ann. Cas. 1916D, note page 379; 21 R. C. L. 1344; 13A C. J. 1377.

But as was held in the *Phelps* case and the Kentucky cases cited, the question whether a corporation which has formally withdrawn from doing business in a state is still subject to the jurisdiction of the courts of that state, must depend upon a reasonable construction of the statute permitting foreign corporations to do business in the state and providing for service of process upon them. The evident purpose of our statute providing for service on the state auditor was to provide a citizen a means for prosecuting a suit against a foreign corporation not owning property in the state, when the corporation has no permanent agent here, and to provide for just such a contingency as we have in this case, where an obligation has been incurred by contract made while the foreign corporation was actually doing business in the state under authority of the statute; for as was said in the Kentucky cases, while the corporation is actually carrying on business in the state, with agents residing here, there is no

real necessity for requiring the corporation to name some person residing in the state to be served with process, or for designating some state officer as attorney in fact. And the provision of section 132 of chapter 32 of the Code, which authorizes a foreign corporation to secure a certificate of withdrawal under the conditions therein set out, that "the issuance of such certificate of withdrawal shall not relieve the corporation of any debt or obligation due from it to the state or any resident thereof," is significant, when read in connection with section 24-a of chapter 54.

While in the case of *Billmyer Lumber Company* v. *Merchants' Coal Company of West Virginia,* 66 W. Va. 696, the action was commenced before the foreign corporation was deprived of its right to do business in the state, Judge POF-FENBARGER, in the opinion, outlines the policy of this state in respect to suits by and against foreign corporations. He says: "A jurisdiction which had vested, was not destroyed by the revocation of the privilege. Any other conclusion would be so unjust and impolitic that the Legislature cannot be deemed to have intended it, and, if it did, the statute might be, to that extent, unconstitutional. When the contract was made, the remedy for its enforcement was a part of it. Surely, the Legislature did not intend to destroy or impair the contract, and to deny all remedy for its enforcement in the courts of this state and compel the obligee to resort to the courts of another state, (which) would amount to a clear impairment of its obligation. * * * Besides, it is against settled and uniform state policy to compel a citizen to resort to a foreign state to collect his debt, when the cause of action arose in the state and the debtor has property therein. *McClung* v. *Seig,* 54 W. Va. 467. This view seems to be within the spirit of the statutes, relating to foreign corporations. Upon complying with certain conditions, they are granted the same rights, powers and privileges and subjected to the same regulations, restrictions and liabilities that are conferred and imposed on corporations chartered under the laws of this state. Code, ch. 54, sec. 30." And it was there said that the revocation of the right to do business in this state worked a *quasi* dissolution of the foreign corporation, and that the corporation was then in

the same situation, in this state, as if its charter had expired. Point four of the syllabus in that case holds: ''The loss by a foreign corporation of its previously acquired right to do business in this state does not affect its capacity to sue or be sued in respect to a contract made, or right vested, when it was lawfully doing business in the state.'' And that case holds that foreign corporations ceasing to do business in this state are subject to the rules of law governing expired domestic corporations in respect to actions against it. In *Colliery Company* v. *Railway Company,* 92 W. Va. 144, this court held that under our statute a domestic corporation after dissolution and surrender of its charter may be sued at law or in equity, and that process against such corporation may be served upon the same persons upon whom it might have been served before dissolution.

In the present case the cause of action arose before the defendant corporation made application to withdraw its business from the state. Defendant was still subject to the jurisdiction of the courts of this state when it breached its contract. There is no question of plaintiff's right to bring suit. To hold that the auditor's authority to accept service of process expired with the issuance of the certificate of withdrawal would be to hold that the statute providing for such withdrawal took away plaintiff's right of action, and relieved defendant of all obligations incurred while doing business in the state under the authority granted it by the state. Such is not the policy of this state in respect to contracts between foreign corporations and its citizens.

Plaintiff argues that the trial court erred in overruling its motion to quash the plea in abatement, because of the defendant's failure to crave oyer of the writ and the return thereon. In view of our holding on the question of service of process on the state auditor, this point becomes immaterial.

The judgment of the lower court will be reversed and the case remanded.

*Reversed and remanded.*