Robert B. WARD, Plaintiff,

v.

**ISLAND CREEK FUEL & TRANSPOR-
TATION COMPANY, a foreign cor-
poration, Defendant.**

Civ. A. No. 1343–W.

United States District Court
N. D. West Virginia.

Dec. 28, 1966.

Maxwell, Young & Morgan, Clarksburg, W. Va., for plaintiff.

Bachmann, Hess, Bachmann & Garden, Wheeling, W. Va., for defendant.

MAXWELL, Chief Judge.

Plaintiff, a West Virginia resident, instituted this Jones Act[1] suit seeking damages for injuries allegedly sustained while performing his duties as an employee of defendant aboard a motor vessel owned by defendant and operated upon the Ohio River near Benwood, West Virginia. The defendant, a Delaware corporation having its principal office in

---

I.  46 U.S.C.A. § 688.

the Southern District of West Virginia, filed a motion to dismiss, asserting that venue is not properly laid in the Northern District of West Virginia. This assertion is based on the premise that the language of 46 U.S.C.A. § 688[2] is the sole source of venue in this cause of action. Defendant claimed that since, at the time the cause of action arose, it neither resided nor had its principal office in this District, the forums provided for in § 688, venue was not proper.

Plaintiff bases his claim that venue is proper on two theories. Plaintiff first contends that "residence," as contemplated by § 688, necessarily includes the definition of "residence" found in the general venue statute, 28 U.S.C.A. § 1391(c), as then written and construed. That section provides that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such incorporation for venue purposes."

At the time the cause of action arose, the defendant was licensed to do business in the State of West Virginia. Having become qualified to do business in this State, defendant's authority or license extended statewide and included both the Northern and Southern Judicial Districts of West Virginia.[3]

The question of the applicability of § 1391(c) to § 688 was settled by the Supreme Court of the United States in Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966). There the Court stated that "the basic intent of the Congress is best furthered by carrying the broader residence definition of § 1391(c) into the Jones Act."

There remains a further consideration upon which the propriety of venue under § 1391(c) must turn. The cause of action arose on May 13, 1962, and the complaint was filed May 12, 1964. In the interim defendant's corporate existence was terminated by dissolution, December 9, 1963, and its authority to do business in the State of West Virginia was withdrawn, March 20, 1964. At the time the cause of action arose defendant was licensed and § 1391(c) was satisfied. However, at the time suit was filed defendant was no longer licensed.

Judicial authority is divided on whether under § 1391(c) the time the cause of action arose or the time suit is filed is crucial. The use of the present tense in § 1391(c), that a corporation may be sued where it "*is* incorporated," "*is* licensed" or "*is* doing business" (emphasis added), invites the conclusion that the filing date controls.

The view that the venue alternatives set out in § 1391(c) refer to the time the suit is filed, is championed by Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (3 Cir. 1956). In that case the defendant, which contended venue was improper, was a New Jersey corporation, registered and doing business in Pennsylvania at the time the cause of action arose. Prior to the institution of suit, however, defendant terminated its registration and business activity in the state. The cause of action arose under the antitrust laws and the Court looked to 15 U.S.C.A. § 22[4] and § 1391(c). The Court appears to have considered the present tense language of those provisions and then perfunctorily stated that the defendant's withdrawal made venue under them improper. Ultimately the Court found ven-

---

2. The relevant portion of which provides: "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

3. W.Va.Code, Ch. 31, Art. 1, § 79 (Michie 1966).

4. Which provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

ue proper under an alternative theory, a theory considered later in this opinion.

The Court has found only five cases that considered favorably the view announced in *Sunbury*. Four are antitrust cases which cite *Sunbury* as authority on 15 U.S.C.A. § 22 and its analysis of the time element thereof.[5] None of the four mention § 1391(c). The fifth case, Dixie Carriers, Inc. v. National Maritime Union of America, 35 F.R.D. 365 (S.D.Tex. 1964), was a suit for damages alleged to have resulted from an illegal secondary boycott. The applicable venue statute was 29 U.S.C.A. § 185(c) which provided the union could be sued "in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." To determine whether venue was proper against a union which admittedly had been representing members at the time the cause of action arose, but which was not at the time suit was filed, the Court looked to § 1391(c), where language in the present tense gave rise to the same question. The Court examined *Sunbury* and the cases following it and concluded that *Sunbury* was correct.

The leading case for the view that § 1391(c) refers to the time the cause of action arose is Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8 Cir. 1965). In that case, a declaratory judgment action with jurisdiction based on diversity of citizenship, venue turned on "doing business," unlike the instant case where "licensed to do business" is applicable. The Court in *Farmers* was greatly persuaded by the fact that the defendant could escape liability in the district where the cause of action arose by the simple expedient of terminating its business activity and withdrawing from the district before suit was filed. Although the Court's rationale in *Farmers* does not apply where the defendant is licensed to do business in the district (because of the consent theory considered later), the rule of that case does have meaning here. The only logically consistent conclusion is that *Farmers* is authority for making the time the cause of action arose critical in all cases under § 1391(c).

The rule of the *Farmers* case was followed in Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997 (8 Cir. 1965).

The Court in *Farmers* acknowledged and approved the same rationale of two earlier cases out of the District Court of Maryland, which held that the time the cause of action arose was critical because that was the only way the purpose of § 1391(c) could be accomplished. The first of the two is L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.C.Md.1962) where a Connecticut resident sued a Kentucky corporation for injuries allegedly sustained while the defendant was doing business in Maryland. The defendant was never licensed to do business in Maryland and withdrew from the state and ceased doing business there before the suit was filed. The Court held venue proper, after having considered and rejected the contra holding of *Sunbury*. The second case, which applied the rule of *L'Heureux*, was Nelson v. Victory Electric Works, Inc., 210 F.Supp. 954 (D.C.Md. 1962). The four remaining cases discovered which lend support to the rule announced in *Farmers* are antitrust cases.[6]

The Court is persuaded that both the weight of authority and logic

5. Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa.1966); City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa.1965); School District of Philadelphia, Com. of Pa. v. Kurtz Bros., 240 F.Supp. 361 (E.D.Pa. 1965); and Gem Corrugated Box Corp. v. Mead Corp., 189 F.Supp. 584 (S.D.N.Y. 1960).

6. Eastland Construction Co. v. Keasbey and Mattison Co., 358 F.2d 777 (9 Cir. 1966); Sharp v. Commercial Solvents Corp., 232 F.Supp. 323 (N.D.Tex.1964); R. J. Coulter Funeral Home, Inc. v. National Burial Ins. Co., 192 F.Supp. 522 (E.D.Tenn. 1960); Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., 140 F.Supp. 401 (E.D.Va.1954).

compel the view that the time the cause of action arose, and not the date of filing, properly determines venue under § 1391 (c).

Plaintiff's second theory urges alternatively that defendant has consented to venue in this District by the act of qualifying or becoming licensed to do business in West Virginia, and that the consent was perpetuated by the obligations incurred when the defendant surrendered its license to do business in this State. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) is cited as authority for the consent theory.

■ Neirbo held "[a] designation by a foreign corporation, in conformity with a valid statute of a State and as a condition of doing business within it, of an agent upon whom service of process may be made * * * an effective consent to be sued in the federal courts of that State." This consent applies to suits based on federal questions as well as diversity, as was the case in Neirbo. Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447 (1940).[7] This consent to be sued may continue to exist even after the corporation has terminated its authority to do business in the state, if, and to the extent that, such is a condition imposed by the state for withdrawal.[8]

■ As was noted earlier, the defendant was qualified or licensed to do business in West Virginia at the time the cause of action arose. As a condition to qualifying, the defendant consented to have the Auditor of the State of West Virginia serve as attorney in fact for the purpose of receiving service of process on behalf of the defendant. West Virginia Code, Chapter 31, Article 1, Section 71 (Michie 1966). The Auditor's authority in this capacity was coextensive with the defendant's license—was statewide.[9]

After having terminated its corporate existence, but before this action was instituted, the defendant withdrew its authority or license to do business in West Virginia. This act did not, however, relieve the defendant of its consent to be sued in West Virginia. The statute under which the withdrawal was effected[10] specifically provides that "[t]he issuance of such certificate of withdrawal shall not relieve the corporation of any debt or obligation due from it to the State or any resident thereof."[11] This provision has been construed by the West Virginia Supreme Court to continue the consent to be sued, as to claims arising while the foreign corporation is licensed.[12] Thus the consent to suit in West Virginia survives the termination of the license, and the survival is in fact a condition of termination.

An order will be entered overruling defendant's motion to dismiss.

7. 1 Moore's Federal Practice, § 0.146(7), and particularly footnote 25 thereunder.

8. Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (3 Cir. 1956) and 1 Moore's Federal Practice, § 0.142 [5.–3.].

9. W.Va.Code, Ch. 31, Art. 1, § 71 (Michie 1966) and DeBoard v. B. Perini and Sons, Inc., 140 W.Va. 833, 87 S.E.2d 462 (1955).

10. W.Va.Code, Ch. 31, Art. 1, § 84 (Michie 1966).

11. Plaintiff is a West Virginia resident. By virtue of W.Va.Code, Ch. 1, Art. 1, § 2 (Michie 1966), which provides that the jurisdiction of the State extends to the opposite (western) shore of the Ohio River, this cause of action arose in West Virginia.

12. DeBoard v. B. Perini and Sons, Inc., 140 W.Va. 833, 87 S.E.2d 462 (1955). Compare Frazier v. Steel & Tube Co. of America, 101 W.Va. 327, 132 S.E. 723, 45 A.L.R. 1442 (1926).