Harvey SIEGEL and Elaine Siegel, husband and wife, David Witt, Robert Van Schaick, Ralph R. Andre and Ruth L. Andre, husband and wife, and Richard Zachary, Plaintiffs,

v.

CHICKEN DELIGHT, INC., Chicken Delight of California, Inc., and Consolidated Foods Corporation, Defendants.

Civ. No. 46271.

United States District Court
N. D. California.

Aug. 17, 1967.

**724**

Broad, Busterud & Khourie, Michael N. Khourie, Royce H. Schulz, San Francisco, Cal., for plaintiffs.

Caspar W. Weinberger, M. Laurence Popofsky, Richard L. Goff, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE B. HARRIS, Chief Judge.

This private treble damage suit initiated by five Northern California "Chicken Delight" franchisees on behalf of themselves and all others similarly situated throughout the United States is before this court on cross-motions filed pursuant to the provisions of Fed.R. Civ.P. 23, that is, on the part of defendants, that the representational allegations contained in the complaint be stricken, and on the part of the plaintiffs, that the action be allowed to continue as a class action.

The complaint is framed within two causes of action. The defendants are charged in the first count, which is an amalgamation of several theories, predicated on Federal law, with asserted violations of (a) Section 1 of the Sherman Act, conspiracy in restraint of trade; (b) Section 2 of the Sherman Act, monopolization and attempted monopolization; (c) Section 3 of the Clayton Act, exclusive dealing and tie-in sales; (d) price discrimination under the Robinson-Patman Act; and (e) anti-competitive merger, Section 7 of the Clayton Act.

The second count runs in favor of all franchisees located within California and is based on the California anti-trust statute commonly referred to as the Cartwright Act, § 382 of the California Code of Civil Procedure. Joinder has been allowed in this regard pursuant to the doctrine of pendent jurisdiction. Plaintiffs request money damages in a presently undetermined sum, and injunctive relief to arrest the continuance of defendants' alleged illegal conduct. Each and every allegation has been denied by the defendants who have further interposed a special defense based upon the *in pari delicto* theory.

At the outset, the court observes that nowhere is there expressed any dominate judicial policy which would remove anti-trust suits as a matter of course from within the province of Rule 23. In fact under the less flexible predecessor to the amended class rule, we find cases such as Kainz v. Anheuser-Busch, 194 F.2d 737 (7th Cir. 1952) and City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa.1965) wherein the use of the class action schematic has received the stamp of judicial approval. Moreover, the new, precise, yet elastic provisions of Rule 23, which are now the judicial yardstick, permit a class suit in cases like the one before us, provided of course, the necessary elements essential thereto are present. "The complete overhaul of Rule 23 significantly expands the scope of class actions * * * the district judge unhampered by traditional classifications, is given a large measure of discretion in balancing conflicting interests." Georgetown L.J. Vol. 54, p. 1204.

## A

### THE CLASS IS SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICABLE (23[a] [1]); AND A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY (23[b] [3])

■ Although the defendants in form attack only the superiority of method clause, an inter-relationship exists *in esse* between the two that demands concomitant consideration. It is undisputed that potentially, the class involves upwards of 650 members, that is, all "Chicken Delight" franchisees in the United States. As such, it would be specious to argue that wholesale joinder would be either practicable or desirable. Yet that is precisely the position taken by the defendants when they urge that there are other more appropriate methods for obtaining adjudication such as permissive joinder under Fed.R.Civ.P. 20, or intervention pursuant to Fed.R.Civ.P. 24. Either device could conceivably bring before this forum 200, 300 or even 600 party-plaintiffs thus complicating rather than simplifying the proceedings.

In addition, there is no indication that any other related litigation has been commenced by other members of the class nor is it apparent that the litigation should not be concentrated in a particular forum, Fed.R.Civ.P. 23(b) (3), thus achieving "economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Advisory Committee's Notes, 39 F.R.D. 102, 103.

■ The main thrust of defense counsel under this sub-head, lies however within the confines of 23(b) (3) (D), "the difficulties likely to be encountered in the management of a class action." It is prognosticated that the task of discovery would be both financially overwhelming and incredibly complex, based upon the assumption that each consenting member of the class would intervene with his own counsel and further that each member's claims would be separate and distinct from one another, thus pointing to "the interest of members of the class in individually controlling the prosecution or defense of separate actions." (Rule 23[b] [3] [A])

The court concurs in neither the presagements nor the conclusion. Too little weight has been ascribed to the flexible provisions of Rule 23, particularly 23(c) (4) which allows the court "When appropriate" to limit the class action to particular issues or to divide the class into sub-classes, and more importantly, to " * * * make appropriate orders: (1) determining the course of proceedings * * *, (3) imposing conditions on the representative parties * * *, and (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time." Rule 23(d), Fed.R.Civ.P. This is certainly a far cry from the judicial arsenal available to a Pennsylvania District Court when in November, 1965, it ruled as proper a class action, antitrust suit involving several thousand potential plaintiffs. City of Philadelphia v. Morton Salt Company, supra.

Finally, "To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent. Like many another practice, necessity was its mother. Its correct limitations must be ascertained by the experiences which brought it into existence." Weeks v. Bareco Oil Co., 125 F.2d 84, 90 (7th Cir. 1941).

### B.

### THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS WHICH PREDOMINATE OVER ANY QUESTIONS AFFECTING ONLY INDIVIDUAL

MEMBERS. RULE 23(a) (2) AND 23(b) (3)

The defendants have briefed these prerequisites *in extenso* and for facility of discussion have listed under appropriate headings, nine general areas of diversity of issue that are alleged to exist among the members of the class, to-wit: (1) damages, (2) and (3) required or forced purchases, (4) coercion, (5) misrepresentations, (6) alleged price fixing, (7) price discrimination, (8) monopoly, and (9) merger.

■ Initially, the defendants would have the court focus its attention on "the immense difficulties and complexities of determining the amount of damages allegedly suffered" by the various franchisees. Suffice it to say, any detailed discussion of the subject at this juncture of the proceedings would be premature, although "Assuming that an unlawful conspiracy or combination in restraint of interstate commerce exists, then, if any person is injured by it in his business or property rights, he may recover." Dowd v. United Mine Workers of America, 235 F. 1, 9 (8th Cir. 1916). And that should the plaintiffs prevail, damages might have to be established on an individual basis was recognized and found to be no obstacle to the maintenance of an anti-trust class suit by the court in Alabama Independent Serv. S. Ass'n v. Shell Petroleum Corp., 28 F. Supp. 386 (N.D.Ala.1939).

The remaining alleged variants are nothing more than a categorization on the part of the defense of the various separate violations pleaded by the plaintiffs within the first count of their complaint. In other words, the court is seemingly asked to prophesy which of the several theories will in fact be relied upon and pursued through trial by the plaintiffs. The invitation to pre-try the case through the vehicle of this motion must be respectfully declined, although some comment is in order.

The integral core of the complaint is contained in paragraphs 17 and 18 thereof. A careful reading of the pleadings reveals that the franchise agreement is the focal point of the alleged acts perpetrated by the defendants to fix prices, to tie-in product sales, to discriminate among the franchisees as to prices charged, and to compel or coerce compliance by the threat of franchise cancellation. Moreover, by affidavit, counsel for the plaintiffs has stated that he has examined substantially all the contracts and that they are similar in provisional content. To argue as defendants do that there are differences in the products required to be purchased; that there are territorial or market dissimilarities; that "the nature, types, extent and effects of such coercive activities could not conceivably be similar in the case of all 700 franchisees"; that respecting price fixing, "It would be nonsense to suggest that, as applied to 700 franchisees throughout the United States for a considerable number of years, there has been anything approaching uniformity in 'menu approval' or defendants' advertising practices"; and that preferential prices are alleged to have been offered to some franchisees while denying them to some plaintiffs and other franchisees, is to overlook the obvious, and ask the court to accept as true, suppositions that remain to be factually established.

■ It is the existence or non-existence of the alleged conspiracy to substantially lessen competition in the market place, to illegally restrain trade and enforce illegal tying provisions and the conduct that established said conspiracy that form the common questions of law or fact in this case. There is present herein a common nucleus of operative facts even though there may be lacking complete identity. "The fact that the members of the class vary in size, type and market locations and the fact that there may be peculiar differences between them with respect to the determination of their damages and the amount thereof does not render this class action improper on the facts of this case. Rule 23(a) (3) does not require that all the members of the class be identically sit-

uated, if there are substantial questions either of law or fact common to all." City of Philadelphia v. Morton Salt Co., supra, 248 F.Supp. at 514.

Likewise, even though the defense attempts to demonstrate diversity within the charge of misrepresentations, the court takes cognizance of another focal document in this regard, an advertising brochure titled "The Door is Open" which the plaintiffs claim was used in the sale of all or practically all franchises. " 'All or substantially all' of certain misrepresentations * * * are alleged to have been made 'by means of advertisements, * * * to each and all of the plaintiffs and investors.' Concealment and omission of the same material facts are alleged as 'to each of the investors.' 'Each of plaintiffs and the other investors' is alleged to have reasonably relied upon the misrepresentations, and to have been misled by the concealment of facts." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964).

To acknowledge defendants' position at this point would be, in effect, an emasculation of the vitality and pliability of the amended rule, as recognized by Judge Edmund Palmieri when he stated that "While there may be different kinds of misrepresentations alleged with respect to different plaintiffs, including some oral misrepresentations, and while such factors might have led to dismissal of a class action under the old rule, e. g., Speed v. Transamerica Corp., 5 F.R.D. 56 (D.Del.1945); Gilbert v. Clark, 13 F.R.D. 498 (D.Mass.1952), the new Rule 23 provides the flexibility to permit this action to proceed. It may very well develop that the misrepresentations made to the purchasers were in fact very similar, if not identical. If, on the other hand, the facts should reveal in the course of the pre-trial development of the case that the alleged misrepresentations were so varied as to render the action unmanageable (Fed.R.Civ.P. 23(c) (1)), the Court can order that the class allegations be stricken and that the action proceed on behalf of the named plaintiffs alone. Fed.R.Civ.P. 23(c) (1) and 23(d) (4)." Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966).

## C

THAT THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS. RULE 23(a) (4)

█ Unquestionably the issue of adequate representation has become more *important since the adoption of the* amendments to Rule 23 which now provides that a judgment in a class suit whether favorable or not will include all parties who have not expressly requested exclusion, Fed.R.Civ.P. 23(c) (3), whereas under the spurious class action predecessor, only those who actually participated were bound. This court however does not entertain any doubt as to "the propriety of a rule which extends the binding, substantive effect of a judgment to absent, but 'described', class members as well as to 'identified' class members.", School District of Philadephia v. Harper & Row Publishers, 267 F.Supp. 1001 (E.D.Pa.1967), since qualifying provisions have been added which enable the court to take necessary protective measures such as ordering notice to be sent to members to signify whether they consider the representation fair and adequate, 23(d) (2), or requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons. 23(d) (4). Having apparently failed to perceive the significance of these important modifications, or having overlooked them completely, the defendants' reliance on the *School District of Philadelphia* case, supra, is misplaced, for it underestimates the ability of a court to safeguard the interests of all parties.

█ Rather, "In determining what constitutes adequate representation in a class action, the size of the class and the nature of the action should be considered." Booth v. General Dynamics Corp., 264 F.Supp. 465 (N.D.Ill.1967). " * * * and whether the relationship between

the parties to the record is unique or one identical and common with that of all others of (the) class." Pelelas v. Caterpillar Tractor Co., 113 F.2d 629, 632 (7th Cir. 1940).

In the present case, we have five franchisees suing on behalf of possibly seven hundred. "This, on its face, seems small, but nevertheless a suit may be welcomed and supported, in fact, by a large percentage of said nine hundred,[1] although many would not care to start separate, individual suits. Others, because of fear of costs and any other good reason, may not favor the class suit. May it be said that the two,[2] therefore, did insure an adequate representation of the others?" Weeks v. Bareco Oil Co., supra, 125 F.2d 91.

An affirmative answer is indicated based upon the prospect that numerical representation will be strengthened once appropriate notice is given even though mere numbers alone are not the critical criteria, and based upon the apparent compatibility of interest, that is, that the subject-matter of the suit is common to all franchisees. Moreover, under present law, those members of the class whose interests are antagonistic to those of their brethren and so signify, may by order be excluded from the suit. To rule otherwise at this early stage of the proceedings would be to give credence and substance to factual assertions on the part of the defense which have yet to make their appearance on the judicial stage.

## D

### THE CLAIMS OR DEFENSES OF THE REPRESENTATIVE PARTIES ARE TYPICAL OF THE CLAIMS OR DEFENSES OF THE CLASS. RULE 23(a) (3)

Although this final factual consideration has been alluded to previously and discussed at some length, mention should be made of defendants' contention that "the applicability of the *pari delicto* defense raises issues which will require separate, individual determinations for each franchisee." First, it is questionable that the defendants may avail themselves of this theory at trial. Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). Secondly, the defense in and of itself is not atypical even though there be variations in proof among the members of the class. This is akin to the situations embodied in stock fraud cases such as *Kronenberg,* supra, where a similar assertion was disposed of as premature in keeping with the spirit and intent of Amended Rule 23.

### CONCLUSION AND ORDER

Accordingly, the court finds that the prerequisites to maintenance of a class action as found in 23(a) and (b) (3), Fed.R.Civ.P., are apparent from the pleadings and exist, at this time, in favor of the plaintiffs, and

It is ordered:

(1) That defendants' motion for an order that the cause not be maintained as a class action is denied.

(2) That the instant action is maintainable as a class action, and pursuant to the provisions of 23(c), Fed.R.Civ.P., the order is made conditional, subject to further order of this court, and may be altered or amended prior to a decision on the merits.

(3) That pending notification of the class as hereafter specified, neither plaintiffs or their counsel, nor defendants or their counsel, shall solicit or otherwise contact the class independently and in the absence of court approval.

It is further ordered that notice of the suit to members of the class as required by 23(c) (2) shall not be directed at this juncture, but rather, shall be postponed until such time as may be deemed appropriate, if at all, by this court based upon further development of pertinent factual matter. Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966).

---

1. In the case at bar, 700.

2. In the case at bar, 5.